IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBORAH J. F., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 22-CV-101-JFJ |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Deborah J. F. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court **AFFIRMS** the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

I.   **General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an

"acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. § 404.1521. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a). A plaintiff is disabled under the Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the

2

decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**II.     Procedural History and the ALJ's Decision**

On June 4, 2020, Plaintiff, then a 44-year-old female, applied for Title II disability insurance benefits. R. 15, 184-85. Plaintiff alleges that she has been unable to work since November 15, 2019, due to a right foot fracture, ruptured left Achilles tendon, torn meniscus, degenerative disc disease, rheumatoid arthritis, depression, anxiety, and sleep problems. R. 184, 199. Plaintiff's claim for benefits was denied initially and on reconsideration. R. 63-102. ALJ Gregory Moldafsky conducted an administrative hearing and issued a decision on August 4, 2021, denying benefits and finding Plaintiff not disabled. R. 15-29, 34-62. The Appeals Council denied review on January 12, 2022 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. § 404.981. Plaintiff filed this appeal on March 9, 2022. ECF No. 2.

In his decision, the ALJ found that Plaintiff's date last insured was September 30, 2022. R. 17. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 15, 2019. *Id.* At step two, the ALJ found that Plaintiff's

degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral knees, meniscal tear of the right knee, tear of the left Achilles tendon, left Achilles tendonitis, fracture of the right third metatarsal, depression, and anxiety were severe impairments. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 17-21. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had a mild limitation in the mental functional areas of understanding, remembering, or applying information; interacting with others; and adapting or managing oneself. R. 19-20. The ALJ found Plaintiff had a moderate limitation in the mental functional area of concentrating, persisting, or maintaining pace. R. 20.

After evaluating Plaintiff's hearing testimony, the medical source opinion evidence, and the objective medical evidence in the record, the ALJ concluded that Plaintiff had the RFC to perform a range of light work with the following limitations:

> [T]he claimant requires a sit/stand option limiting her to standing and/or walking only 4 hours in an 8-hour workday; can only occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally push, pull, and operate foot controls with bilateral lower extremities; can occasionally stoop, balance, kneel, and crouch; can never crawl; can never work at unprotected heights; and is limited to simple (as defined in the Dictionary of Occupational Titles as SVP ratings 1 and 2), repetitive tasks, in a work environment that is not fast-paced and does not have strict production quotas (e.g., work that may be goal based or measured by end result).

R. 21.

At step four, the ALJ concluded that Plaintiff could not return to her past relevant work. R. 27. Based on the testimony of a vocational expert ("VE"), however, the ALJ concluded at step five that Plaintiff could perform other occupations existing in significant numbers in the national economy, including small parts assembler, laundry folder, and inspector hand packager. R. 28. The ALJ determined the VE's testimony was consistent with the information contained in the

4

Dictionary of Occupational Titles ("DOT") but noted the DOT does not address "use of the lower extremities, pace and production rate, and tolerances for a sit/stand option." R. 28-29. The ALJ then explained the VE based her testimony concerning such matters on her training, education, and experience. R. 29. Accordingly, the ALJ concluded Plaintiff was not disabled. *Id*.

### III.   Issues

Plaintiff raises two points of error in her challenge to the Commissioner's denial of benefits, which the undersigned re-organizes into three for clarity: (1) the ALJ failed to properly evaluate the state agency psychologists' opinions regarding Plaintiff's degree of limitation in the "paragraph B" criteria; (2) the ALJ ignored significantly probative evidence related to her left foot, failed to account for all her impairments and limitations, and formed his own medical opinion when assessing the RFC; and (3) the ALJ failed to resolve a conflict between the RFC assessment and the reasoning level assigned by the DOT to the jobs the VE identified at step five. ECF No. 19.

### IV.   Analysis

#### A.   ALJ's Consideration of the "Paragraph B" Criteria was Proper

Although the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520 applies to the evaluation of all impairments, the regulations require the ALJ to apply a "special technique" at steps two and three when the claimant alleges (or the record contains evidence of) a mental impairment. 20 C.F.R. § 404.1520a. If the claimant has a medically determinable mental impairment, the ALJ must assess the claimant's limitations attributable to such mental impairments in the following four broad areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(b)(1), (c)(3). These areas of mental functioning are known as the "paragraph B" criteria. 20 C.F.R. Part 404, Subpart P,

5

Appendix 1, §12.00(E). The ALJ rates the claimant's degree of limitation in each of the "paragraph B" criteria using a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. §404.1520a(c)(4). "The ALJ's degree-of-limitation ratings then inform his conclusions at steps two and three of the five-step analysis." *Wells v. Colvin,* 727 F.3d 1061, 1068 (10th Cir. 2013). If the ALJ rates the claimant's degree of functional limitation as "none" or "mild," he will generally find the claimant's mental impairment(s) not severe at step two. 20 C.F.R. § 404.1520a(d)(1). If the mental impairment is severe, the ALJ will then determine at step three whether such impairment meets or equals one of the listed impairments the Commissioner deems sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520a(d)(2) & Part 404, Subpart P, Appendix 1 ("the listings").

On July 23, 2020, state agency psychiatrist Dr. James Sturgis completed a Psychiatric Review Technique ("PRT") form wherein he found Plaintiff's severe mental impairments consisted of depressive, bipolar, and related disorders, and anxiety and obsessive-compulsive disorders. R. 68. Using the "paragraph B" criteria for listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders), Dr. Sturgis opined that Plaintiff was moderately impaired in the four broad areas of mental functioning set forth above. *Id.* Dr. Ryan Jones affirmed Dr. Sturgis' PRT findings on review. R. 88-91.

Because the ALJ found Plaintiff's depression and anxiety were severe impairments at step two, the ALJ considered listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders) at step three. R. 17, 19-21. To meet one of these listings, a claimant must satisfy the "paragraph A" medical documentation criteria, and either the "paragraph B" functional criteria or the "paragraph C" criteria for serious and persistent mental

disorders. 20 C.F.R. Part. 404, Subpart. P, Appendix 1, §§ 12.04, 12.06 (2021).[1] In analyzing the "paragraph B" criteria, the ALJ found Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace, and mild limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing oneself. R. 19-21. Because Plaintiff's mental impairments did not result in at least one extreme limitation or two marked limitations, the ALJ concluded that Plaintiff's mental impairments did not satisfy the "paragraph B" criteria. R. 20. As part of the RFC discussion, the ALJ explained that the moderate limitations Drs. Sturgis and Jones identified in Plaintiff's ability to interact with others and adapt or manage herself were unpersuasive, because they were inconsistent with the record as a whole, which showed only mild limitations in these functional areas.[2]

Plaintiff alleges error with respect to the ALJ's consideration of the "paragraph B" criteria findings made by Drs. Sturgis and Jones on their PRT forms. ECF No. 15 at 7-15. She asserts the ALJ ignored the abnormal mental status examination findings throughout the record when he found their opinions that Plaintiff had moderate limitations in the three functional areas at issue were unpersuasive, and instead found Plaintiff had only mild limitations in these areas.

The Court finds no error in the ALJ's evaluation of the medical source opinions pertaining to the "paragraph B" criteria. In finding Plaintiff mildly limited in the three mental functional

---

[1] Because Plaintiff cannot meet either listing without satisfying the "paragraph B" or "paragraph C" criteria, the Court assumes, without deciding, that Plaintiff satisfies the medical documentation criteria of "paragraph A." Likewise, Plaintiff does not argue that she meets or equals the "paragraph C" criteria, so the Court's analysis focuses on the ALJ's evaluation of the "paragraph B" criteria.

[2] The ALJ did not include the functional area of understanding, remembering, and applying information in this portion of his persuasiveness analysis. This appears to be a scrivener's error. The ALJ acknowledged Drs. Sturgis and Jones found Plaintiff moderately limited in the four areas of mental functioning earlier in the same paragraph, and all the evidence the ALJ referenced to support his step-three finding of a mild limitation in Plaintiff's ability to understand, remember, and apply information is also referenced to support his persuasiveness analysis. R. 19, 26-27.

7

areas at issue, the ALJ thoroughly discussed Plaintiff's function report, her hearing testimony, and the findings of her treating mental health providers. R. 19-21. Specifically, regarding the functional area of understanding, remembering or applying information, the ALJ noted Plaintiff reported no problems with memory, understanding, or following instructions, and stated she could pay bills, count change, handle a savings account, use a checkbook, prepare light meals, perform housework, care for a pet, and work for a fast-food restaurant on a part-time basis. R. 19. The ALJ also noted neither Plaintiff nor her providers expressed concerns for remarkable deficits or changes to her memory or cognitive capabilities, and that the mental status examinations of record were normal concerning Plaintiff's memory, concentration, fund of knowledge, and thought processes. *Id.* As to the functional area of interacting with others, the ALJ explained that Plaintiff's providers routinely found her to be cooperative and pleasant, her mood symptoms waxed and waned, and Plaintiff testified that she was able to control her emotions through the end of her shifts at her part-time job. R. 19-20. As to Plaintiff's ability to adapt or manage herself, the ALJ noted Plaintiff reported no problems with personal care and did not need reminders to perform personal care or take medication. R. 20. The ALJ further noted Plaintiff's treating providers routinely observed she was appropriately dressed with adequate hygiene, but that there was a discrepancy between some providers' findings regarding her insight and judgment, ranging from normal to fair. *Id.* The ALJ then once again noted Plaintiff was able to work on a part-time basis, and that her mental symptoms improved with medication. *Id.* The ALJ thus identified specific evidence to support his determination that Plaintiff has mild, rather than, moderate limitations in the three functional areas at issue.

The Court rejects Plaintiff's contention that the ALJ overlooked the abnormal mental status examination findings of record. Plaintiff maintains the ALJ overlooked the abnormal mental status

examination findings throughout the record, particularly as to her mood, insight, and judgment, in reaching his "paragraph B" criteria determinations. ECF No. 19 at 6-7. Plaintiff asserts such findings warrant, at a minimum, a moderate limitation in the three functional areas at issue. *Id.* However, as set forth above, the ALJ specifically considered the waxing and waning nature of Plaintiff's mood-related symptoms as part of his discussion of Plaintiff's limitations in the functional area of interacting with others. R. 20. Likewise, the ALJ considered Plaintiff's fair insight and judgment as part of his analysis of the functional area of adapting or managing oneself. *Id*. Because Plaintiff points to no evidence the ALJ overlooked, her arguments amount to a request that the Court reweigh the evidence, which it cannot do. *See Hackett*, 395 F.3d at 1172 ("We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence, but we will not reweigh the evidence or substitute our judgment for the Commissioner's.") (cleaned up).

Even assuming the ALJ erred by finding Plaintiff mildly, rather than moderately, limited in her ability to understand, remember, and apply information; interact with others; and adapt or managing oneself, this error would be harmless. Since neither Dr. Sturgis nor Dr. Jones found Plaintiff more than moderately limited in any of the four mental functional areas, their severity ratings still fall short of the degree of limitation necessary to satisfy the "paragraph B" criteria. *See* 20 C.F.R. Part. 404, Subpart. P, Appendix 1 § 12.00(A)(b) (2021) ("To satisfy the paragraph B criteria, [the claimant's] mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning.").

Moreover, as the ALJ correctly stated, "the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." R. 14. *See* Soc. Sec. Rul. ("SSR") 96-8p, 1996 WL

374184 at *4; *Vigil v. Colvin,* 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."). "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listings of Impairments, and summarized on the [Psychiatric Review Technique Form]." SSR 96-8p, at *4. Here, despite finding Plaintiff mildly limited in all but one of the "paragraph B" criteria, the ALJ nevertheless found Plaintiff's depression and anxiety were severe impairments and thoroughly analyzed Plaintiff's resulting work-related functional limitations as part of the RFC assessment. Plaintiff does not challenge the ALJ's RFC assessment related to her mental impairments.

      B.      **ALJ Did Not Err in Formulating the RFC**

Plaintiff asserts the ALJ's RFC determination related to her physical impairments is not supported by substantial evidence, because he ignored a December 2020 MRI of her left ankle, failed to account for all her limitations related to her feet, and improperly formed his own medical opinion regarding Plaintiff's limitations. ECF No. 19 at 8. A claimant's RFC is her "*maximum* remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week despite her medical impairments and symptoms. SSR 96-8p, at *2. In assessing the RFC, the ALJ must "include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations. *Id,* at *7. In other words, the ALJ must explain the basis for the limitations included in the RFC assessment with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. Additionally, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence" of record were considered and resolved. *Id.* If the RFC conflicts

with a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id.*

### 1. ALJ Considered all the Evidence and Accounted for all of Plaintiff's Impairments and Limitations

Plaintiff asserts that the ALJ erred in his RFC assessment, because he ignored a December 2020 MRI of Plaintiff's left ankle showing an Achilles tendon tear. Plaintiff further contends the ALJ should have limited Plaintiff to sedentary work to account for her foot-related impairments, pointing to the December 2020 left ankle MRI and a September 2020 right foot x-ray showing a bone fracture. ECF No. 19 at 8.

The Court finds no error in the ALJ's analysis of Plaintiff's right foot and left ankle impairments. The ALJ thoroughly discussed Plaintiff's hearing testimony and the findings of her treating and reviewing physicians in his decision. R. 22-24. The ALJ also discussed the imaging of record, including the December 2020 left ankle MRI Plaintiff claims he ignored. R. 23-24. Additionally, the ALJ noted Plaintiff's testimony that she wears a "brace" on her right foot when she is at work and a "boot" when she is not, experiences pain within an hour and a half of beginning her shift, takes one 15-minute break during her 5-hour shift, and wears a "boot" for her left foot once every two weeks. R. 22.

In the RFC discussion, the ALJ explained that the state agency physicians' opinion that Plaintiff retained the capacity for light work with frequent crawling, stooping, and climbing ladders, ropes, or scaffolds was only "somewhat persuasive." R. 26. Instead, the ALJ included additional standing and walking limitations based on the record as a whole, including a September 2020 examination of Plaintiff's right foot and left ankle, the September 2020 right foot x-ray, and the December 2020 left ankle MRI. *Id.* The ALJ further explained he accounted for Plaintiff's testimony regarding the pain she experiences at the end of her 5-hour shift by including a sit/stand option with a limitation to 4 hours of standing and walking in an 8-hour workday. *Id.*

The Court concludes the ALJ considered the evidence related to Plaintiff's right foot and left ankle impairments and explained how such evidence supported the RFC assessment. *See Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir. 2000) ("The ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence."). The ALJ's RFC was more restrictive than the state agency physicians' opinions, and Plaintiff does not identify any evidence the ALJ failed to consider. Thus, Plaintiff's assertion that the evidence supports greater functional limitations than the ALJ found once again amounts to a request that the Court reweigh the evidence in her favor. *See Oldham v. Astrue,* 509 F.3d 1254, 1257-58 (10th Cir. 2007) ("We review only the sufficiency of the evidence, not its weight . . . . Although the evidence may have also supported contrary findings, we may not displace the agency's choice between two fairly conflicting views[.]") (cleaned up).

### 2. ALJ Did Not Form His Own Medical Opinion

Plaintiff argues the ALJ's RFC is not supported by substantial evidence, because he disagreed with the state agency physicians' opinion that Plaintiff could perform light work with certain frequent postural limitations and instead limited her to light work with more restrictive postural, standing, and walking limitations in the RFC. ECF No. 19 at 8. It is true that "[t]he ALJ may not substitute his own opinion for that of [Plaintiff's] doctor." *Miller v. Chater,* 99 F.3d 972, 977 (10th Cir. 1996) (cleaned up); *see also Kemp v. Bowen,* 816 F.2d 1469, 1476 (10th Cir. 1987) ("While the ALJ is authorized to make a final decision concerning disability, he cannot interpose his own 'medical expertise' over that of a physician . . . ."). However, an ALJ is not required to have a specific RFC opinion to assess Plaintiff's functional limitations. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (explaining that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional

capacity in question"); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.") (cleaned up).

In this case, the ALJ adopted the light work exertional limitation identified by the state agency physicians in the RFC, but further limited Plaintiff's postural activities, standing, and walking based on her hearing testimony, treatment notes, and imaging. In other words, the ALJ's RFC was consistent with the state agency physicians' exertional limitation, but more restrictive than their non-exertional limitations in light of Plaintiff's own statements and the record as a whole. Thus, the ALJ did not form his own medical opinion, but rather relied on the state agency physicians' opinion, Plaintiff's own statements, and the objective evidence of record in arriving at the RFC determination. Because the ALJ thoroughly considered Plaintiff's medical records, the medical source opinion evidence, and Plaintiff's testimony in reaching the RFC assessment, his determination is supported by substantial evidence.

   **C. ALJ's RFC Determination is Consistent with Reasoning Level Two**

Plaintiff asserts the ALJ erred in concluding that her RFC is compatible with the jobs of small parts assembler, laundry folder, and inspector hand packager, because an unresolved conflict exists between the RFC limitation of "simple (as defined in the Dictionary of Occupational Titles as SVP ratings 1 and 2), repetitive tasks" and the reasoning level the DOT assigns to these jobs. ECF No. 19 at 9-11. The DOT appends a "definition trailer" to each job, which is comprised of a number of selected occupational characteristics, including the General Educational Development ("GED") Scale. *See* DOT, app. C, 1991 WL 688702 (4th ed. 1991). The GED Scale is divided into three subparts: Reasoning Development, Mathematical Development, and Language

13

Development. *Id.* There are six levels for each GED Scale subpart, with level one representing the lowest development level and level six representing the highest. *Id.*

The DOT assigns a reasoning level of two to the jobs the VE identified and the ALJ relied upon at step five. DOT §§ 706.684-022 (small parts assembler), 369.687-018 (laundry folder), 559.687-074 (inspector hand packager). Jobs with a reasoning level of two require a worker to "[a]pply common sense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.*

Plaintiff specifically asserts the RFC limitation of "simple (as defined in the Dictionary of Occupational Titles as SVP ratings 1 and 2), repetitive tasks" restricts her to jobs with a reasoning level of one, and thus a conflict exists between the RFC and the level-two reasoning required by jobs the VE identified at step five. Plaintiff relies on the Social Security Administration's Program Operations Manual System ("POMS") as support for the premise that a limitation to simple, repetitive tasks eliminates jobs requiring level-two reasoning. *See* POMS § DI 25020.010(A)(3) (unskilled work requires the abilities to "understand, carry out, and remember simple instructions" and to "make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions"); POMS § DI 25020.010(B)(4) (semiskilled and skilled work require the ability to understand, remember, and carry out "detailed instructions").

Plaintiff's argument is not persuasive. The Tenth Circuit has stated that an RFC limitation of simple and routine tasks "appears" consistent with level-two reasoning. *Hackett,* 395 F.3d at 1176. The Tenth Circuit has also determined that an RFC limitation of "simple, repetitive and routine work" should not "be construed as a limitation to jobs with a reasoning-level rating of one." *Stokes v. Astrue,* 274 F. App'x 675, 684 (10th Cir. 2008). Here, Plaintiff makes the same

14

argument the Tenth Circuit rejected in *Stokes*, and her reliance on the POMS is misplaced. *See, e.g., Rainwater v. Colvin,* No. 15-CV-491-GKF-FHM, 2016 WL 11468941, at *2 (N.D. Okla. Sept. 21, 2016) (noting that, although the DOT "employ[s] the word 'detailed,' reasoning level 2 jobs are not inconsistent with" an RFC limitation of understanding, remembering, and carrying out simple instructions), *report and recommendation adopted*, 2016 WL 6561298 (N.D. Okla. Nov. 4, 2016). Plaintiff does not persuasively explain how her RFC is inconsistent with a GED reasoning level of two, particularly in light of the Tenth Circuit's findings in *Hackett* and *Stokes*. Accordingly, there is no conflict between Plaintiff's RFC limitation of "simple (as defined in the Dictionary of Occupational Titles as SVP ratings 1 and 2), repetitive tasks" and the level-two reasoning required by the small parts assembler, laundry folder, and inspector hand packager jobs.

V.    Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 12th day of May, 2023.

_____
JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT